UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY A. CASTLE,

       Plaintiff,                      Case No. 12-14497
                                               HON. GERSHWIN A. DRAIN

vs.

PETSMART, INC.,
*et al.*,
       Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY [#23] AND GRANTING PLAINTIFF'S MOTION TO CONTINUE DATES [#29]**

**I.    PLAINTIFF'S MOTION TO COMPEL**

    **A.    Introduction**

Presently before the court is Plaintiff's Motion to Compel Discovery filed on May 30, 2013. Defendants filed a Response on June 12, 2013 opposing the Motion, stating that Plaintiff's discovery requests are overly broad. For the reasons that follow, Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

Plaintiff began working for Defendants in August of 2006 in the Ann Arbor location. She was promoted to acting manager of PetsHotel in the summer of 2007, and later given the position permanently. On or about April 7, 2011, Plaintiff notified Angela Clark, the manager of the Ann Arbor location, that she was pregnant. Plaintiff claims that Clark responded to this news with

"notable coolness" and was hostile towards Plaintiff afterwards. On April 10, 2011, there was a dog fighting incident at the pet hotel that Plaintiff managed. This incident was investigated by the Significant Incident Team ("SIT"), a centralized entity that has authority to investigate incidents that occur in Defendants' stores. The SIT is compiled of 14 members, though not every member is required to take part in a review, nor does SIT keep track of what members did take part in a review.

On April 26, 2011, Plaintiff was terminated based on the recommendation of SIT. Defendants claim they told Plaintiff at that time the reasons she was fired. During the discovery process, Defendants produced a copy of the termination notice that explains Plaintiff was terminated because she admitted to taking actions that were against safety policies and procedures and that she "built a culture" that allowed associates to violate these rules. Plaintiff maintains that she always received positive reviews in her position and that she was not responsible for the dog fighting incident. She claims the actual reason she was terminated was because of her pregnancy. Plaintiff filed suit on October 11, 2012, alleging wrongful termination under Title VII and the Michigan Elliott-Larsen Civil Rights Act.

Plaintiff has made several discovery requests in an attempt to establish that she was treated differently than similarly situated employee because she was pregnant. Specifically, Plaintiff requested the same "incident details" at the other stores managed by the District Manager, James Conner. Defendants responded to this request, but Plaintiff complains that many documents produced were not requested, the documents that were produced related to irrelevant procedures, and some of the same documents were produced multiple times. Plaintiff also claims that Defendants failed to produce documents related to Plaintiff's placement, benefit plans, personnel policies, and organizational charts. In response, Defendants argue that Plaintiff requests information

relating to national employees and is entirely too broad. Defendants also dispute that their response included irrelevant information.

### B. Law & Analysis

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Federal Rule of Civil Procedure 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

The first issue for consideration is Plaintiff's discovery requests regarding treatment of comparables. The main dispute is whether Plaintiff's definition of "employees" is too broad. In her requests, Plaintiff seeks information about employees who could be terminated by the same SIT representatives that participated in the decision to terminate Plaintiff. Defendants object to this request because SIT has jurisdiction over about 52,000 employees. Further, Defendants dispute that SIT took part in the decision to terminate Plaintiff. Instead, Defendants maintain Linda Moore, Dawn Olsen, James Conner, Todd Barth and Greg Scanlon took part in the decision to terminate Plaintiff. Citing *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992), Defendants claim that to be similarly situated an employee must have dealt with the same supervisor, be subject to the same standards, and engage in the same conduct. Under that framework, Defendants insist that the only relevant inquiry is the previous actions by the individuals who participated in the investigation and decision to terminate Plaintiff.

More recent decisions, such as *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741 (6th Cir. 2012), have distinguished the decision in *Mitchell*. *Bobo* makes it clear that employees do not need

to have the same supervisor to be similarly situated. *Id*. at 751. Rather, all that is required is that Plaintiff demonstrate that she and her, "proposed comparators were similar in all relevant respects . . . ." *Id*.

Employees under the jurisdiction of SIT that were reprimanded for similar conduct satisfy the demands of *Bobo*. In the EEOC proceedings, Defendants asserted that SIT recommended terminating Plaintiff. Since SIT recommended firing Plaintiff, SIT's recommendations in similar cases are also relevant. Further, as stated by Defendant, "SIT evaluates high priority pet safety incidents for potential policy violations in an effort to establish consistency in enforcing policies and procedures when policy violations are discovered." This statement makes clear that policy violations are evaluated on the same guidelines. Defendants concerns about the size of production is understandable, but they have only their own highly-centralized review structure to blame.

Defendants are correct, however, that Plaintiff is not entitled to all employee files. For a file to be relevant, the accused misconduct must be of "comparable seriousness." *Id*. Without more information before it, this Court may not provide a detailed list of equivalent violations. This Court is optimistic that the parties may reach a fair agreement on this issue without further intervention.

As for the interrogatories seeking information regarding Defendants' treatment of pregnant employees, Defendants claim that they do not track whether employees are pregnant. If this information is not maintained, then there is simply nothing for Defendants to produce in response to these requests. If Defendants do maintain any records of this information, they must produce it, which includes information such as maternity leave requests made by employees. If Defendants intend to point towards beneficial treatment of pregnant employees, they must provide that information as well since Request Nos. 30-31 are reasonable. If Plaintiff has reason to believe that

Defendants may have additional responsive documents, she is welcome to file another motion.

Finally, Defendants must also produce the information requested by Interrogatory No. 7, which seeks information relating to other dog fights in stores managed by James Conner. In their initial objection, Defendants claimed the request is overly broad as it will include incidents that are not designated as "High Priority." However, if an incident is not designated as "High Priority," this does not necessarily mean it is irrelevant. Presumably, the decision to designate an incident as "High Priority" is a discretionary act in itself. Plaintiff may attempt to establish that her alleged misconduct is not typically treated as a "High Priority" incident, which demonstrates unfair treatment in its own right. In order to conduct this inquiry Plaintiff must be able to compare other dog fight incidents that were not designated as "High Priority." Once again, the files must involve conduct of a similar seriousness as Plaintiff's alleged misconduct.

The Court will now discuss the Interrogatories relating to Plaintiff's *prima facie* case. Interrogatory No. 4 asks Defendants to specify the policies Plaintiff violated. Defendants respond that they already notified Plaintiff of the violations when she was terminated and later produced the termination notice that provided the reasons. Defendants have provided the reasons for termination, but it appears that Plaintiff seeks a specific list of the exact policies that were violated. This information is relevant to Plaintiff's claim and there is no reason for Defendants not to provide what should be a simple answer.

Interrogatory No. 6 and Requests Nos. 26-28 seek details about incidents that occurred in the same store on April 10, 2011. Defendants object on the grounds that these other incidents were not "High Priority," an objection already dismissed in the discussion of Interrogatory No. 7. Defendants also argue that these incidents are not at all comparable to the events leading to

Plaintiff's termination. Plaintiff requests further information on these incidents on the basis that it will lead to an understanding of what occurred on April 10, 2011. To the extent that these incidents are related to the dog fight, then Defendants must provide answers to Interrogatory No. 6. However, if the incidents are completely independent of the dog fight, then they are irrelevant and Defendants need not provide answers.

Defendants have already provided an adequate response to Requests No. 2 and 14, which asks for the personnel file of Plaintiff's replacement. Defendants have offered to provide the disciplinary record of Plaintiff's replacement, which should suffice as it does not appear that there was a change in the duties of the new manager. Defendants should, however, provide a response to Request No. 21 if such documentation was kept. Plaintiff seeks information concerning how her replacement was selected, which could produce relevant information to her claim. That her replacement was a transfer does not answer why he was chosen to replace Plaintiff. Defendants should produce whatever documentation there is that outlines the criteria used to make the decision to hire Plaintiff's replacement.

Defendants must respond to Request No. 33. Defendants have accused Plaintiff of allowing a culture of disobeying safety policies and procedures to set in. One way of disputing this claim is for Plaintiff to demonstrate that she disciplined or counseled associates on safety policies and procedures, thus Request No. 33 is clearly aimed at relevant information. Defendants object to the burden of having to review every employee that Plaintiff supervised to determine whether they were counseled or disciplined by Plaintiff. While this Court does not agree that this is a particularly burdensome request, Plaintiff should assist Defendants in this inquiry by providing the names of employees that she remembers counseling or disciplining.

As to the "Miscellaneous" requests, Interrogatory No. 1 appears to have been answered already. Defendants detailed the reasons for termination in the notice sent to Plaintiff. Perhaps Plaintiff is not satisfied with the reasons given, but that is what this case is all about. As to Interrogatory No. 3, Defendants should, in the spirit of cooperation, provide the description of the job duties of Plaintiff's former position rather than refer to documents produced. It appears that Defendants have already responded to Requests Nos. 6-8, 16, and 35. If Plaintiff is still not satisfied with the documents provided, then Plaintiff may file another motion.

Defendants must respond to Request No. 9, which asks for the last known address for former employees that took part in the decision to terminate Plaintiff. Plaintiff's request is relevant as these former employees could provide valuable testimony about the motivating factors for Plaintiff's termination. Defendants state this is overly broad, but do not provide any reason to think this is the case. This Court does not believe an "exhaustive search" would be required to provide the last known address of former employees, nor have Defendants given reason to believe that there are many former employees who participated in the decision rendering this request unduly burdensome. Plaintiff may very well want to call these former employees as witnesses and is entitled to know their last known address.

## II. PLAINTIFF'S MOTION TO CONTINUE DATES

Plaintiff filed the present Motion to Continue Dates on June 28, 2013. Defendants filed a Response on July 3, 2013. Defendants do not object to Plaintiff's request for a thirty-day extension to the discovery deadline. Upon review of the parties' filings, the Court finds good cause exists for extending the discovery deadline. Accordingly, the following dates shall govern in this matter:

Discovery cutoff: August 26, 2013

| | |
|---|---|
| Dispositive motion cutoff: | September 17, 2013 |
| Case Evaluation: | September of 2013 |
| Settlement Conference before M.J. Komives: | December of 2013 |
| Motions *in Limine* due: | December 2, 2013 |
| Final Pretrial Order due: | January 7, 2014 |
| Final Pretrial Conference: | January 14, 2014 at 11:00 a.m. |
| Trial: | January 28, 2014 at 9:00 a.m. |

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Discovery [#23] is GRANTED IN PART and DENIED IN PART.  Plaintiff's Motion to Continue Trial Dates [#29] is GRANTED.

SO ORDERED.

Dated:  July 12, 2013

>   S/Gershwin A. Drain
>   GERSHWIN A. DRAIN
>   UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 12, 2013, by electronic and/or ordinary mail.

>   S/Tanya Bankston
>   Deputy Clerk